UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CINDY FULLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NEVADA GOLD & CASINOS, INC., WILLIAM J. SHERLOCK, FRANK CATANIA, WILLIAM G. JAYROE, RUDOLPH K. KLUIBER, SHAWN W. KRAVETZ, and FRANCIS M. RICCI,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1. **VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>2. **VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Cindy Fuller ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.  This is a class action brought by Plaintiff on behalf of herself and the other shareholders of Nevada Gold & Casinos, Inc. ("Nevada Gold" or the "Company"), except Defendants (defined below) and their affiliates, against Nevada Gold and the members of Nevada Gold's board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Nevada Gold and Maverick Casinos LLC ("Maverick").

1

2. On September 18, 2018, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with the Maverick, pursuant to which, Nevada Gold shareholders will receive $2.50 in cash for each share of Nevada Gold stock they own (the "Merger Consideration"). On November 29, 2018, Nevada Gold and Maverick entered into Amendment No. 1 to Agreement and Plan of Merger, to account for the Securities Purchase Agreement and the Securities Escrow Agreement.

3. On December 3, 2018, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act that recommends shareholders vote in favor of the Proposed Merger.

4. While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading. Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the Company's financial projections; (ii) the valuation analyses performed by the Company's financial advisor, Rossoff & Company, LLC ("RCO"), in support of its fairness opinion; and (iii) the background of the Proposed Merger.

5. It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

6. For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff

seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Nevada Gold shareholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.  Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.  Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Nevada Gold's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District

appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of Nevada Gold common stock and held such stock since prior to the wrongs complained of herein.

11. Defendant Nevada Gold is a Nevada corporation with its principal executive offices located at 133 E. Warm Springs Road, Suite 102, Las Vegas, Nevada 89119. Nevada Gold is a gaming company involved in financing, developing, owning, and operating gaming properties and projects. Nevada Gold's common stock trades on the NYSE under the symbol "UWN."

12. Individual Defendant William J. Sherlock is director of Nevada Gold and Chairman of the Board.

13. Individual Defendant Frank Catania is a director of Nevada Gold and the President of the Company.

14. Individual Defendant William G. Jayroe is, and has been at all relevant times, a director of Nevada Gold.

15. Individual Defendant Rudolph K. Kluiber is, and has been at all relevant times, a director of Nevada Gold.

16. Individual Defendant Shawn W. Kravetz is, and has been at all relevant times, a director of Nevada Gold.

17. Individual Defendant Francis M. Ricci is, and has been at all relevant times, a director of Nevada Gold.

18. The parties identified in ¶¶ 11-17 are collectively referred to as the "Defendants".

## **CLASS ACTION ALLEGATIONS**

19. Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Nevada Gold common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

20. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of December 3, 2018, Nevada Gold had 16,917,382 shares of common stock issued and outstanding held by hundreds to thousands of individuals and entities—the actual number of public shareholders of Nevada Gold will be ascertained through discovery;

(b) The holders of these shares are believed to be geographically dispersed through the United States;

(c) There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

   i. Whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

   ii. Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated;

(d) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e) The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**I.   Background and the Proposed Merger**

21. Nevada Gold, incorporated on April 7, 1977, is a gaming company involved in financing, developing, owning, and operating gaming properties and projects. The Company's segments include Washington, South Dakota, Nevada, and Corporate. The Company operated a portfolio of nine mini-casinos in Washington State (Washington), which include restaurants, bars, and approximately 130 table games. The Company owned A.G. Trucano, Son and Grandsons, Inc. (South Dakota), a slot machine route operation in Deadwood, South Dakota consisting of over 700 slot machines in 16 locations. It also owned Club Fortune Casino in Henderson, Nevada. Its gaming facility operations are located in the United States, specifically in the states of Nevada, Washington, and South Dakota.

22. Maverick is managed and majority owned by Eric Persson. Eric Persson is also a Manager of, and holds the largest percentage membership interest in, Maverick Gaming, LLC f/k/a 888 Gaming, LLC ("Maverick Gaming"), which owns the Wendover Nugget Hotel & Casino and

Red Garter Hotel & Casino in Wendover, Nevada, along with various other assets. Maverick was organized for the purpose of entering into the Merger Agreement and consummating the transactions contemplated by the Merger Agreement. It has not conducted any activities to date other than activities incidental to its formation and in connection with the transactions contemplated by the Merger Agreement.

23.     On September 18, 2018, Nevada Gold issued a press release to announce the Proposed Merger stating, in relevant part, as follows:

**Nevada Gold & Casinos Announces Sale / Merger Agreement**

LAS VEGAS, NV - September 18, 2018 — Nevada Gold & Casinos, Inc. (NYSE MKT: UWN) today announced the signing of a definitive merger agreement with Maverick Casinos, LLC ("Maverick"). Under the terms of the merger agreement, Maverick will acquire all of the outstanding shares of the Company's common stock for $2.50 per share in cash, subject to certain minor adjustments. The transaction will result in the Company becoming a private company.

The Manager of Maverick is Eric Persson. An affiliate of Maverick owns the Wendover Nugget Hotel & Casino and Red Garter Hotel & Casino in Wendover, Nevada, along with various other assets.

Maverick intends to fund the transaction primarily with debt financing from Nevada State Bank plus equity financing from Maverick. The transaction is not subject to a financing condition.

William Sherlock, Chairman of Nevada Gold, said "Our goal was to obtain the highest value in a sale of the Company. We believe the transaction announced today achieves our objective and provides immediate cash consideration for our shareholders."

The transaction is subject to approval of a majority of the shareholders of Nevada Gold, the approval of applicable gaming authorities, completion of the sale of the Company's Club Fortune casino in Henderson, Nevada, which is under contract, and other customary closing conditions. The companies expect the transaction to close by the end of 2018.

The Company's Board of Directors has unanimously approved the merger agreement.

Rossoff & Company, LLC is serving as financial advisor and Hughes Hubbard & Reed LLP is serving as legal counsel to the Company in connection with the transaction.

24. The Merger Consideration represents inadequate compensation for Nevada Gold shareholders. Indeed, the $2.50 Merger Consideration represents a 10.74% *discount* to the Company's 52-week high trading price. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

## II.     The Proxy Is Materially Incomplete and Misleading

25. On December 3, 2018, Nevada Gold filed the Proxy with the SEC in connection with the Proposed Merger. The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to cast an informed vote regarding Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

26. First, the Proxy entirely omits all of the Company's financial projections. In rendering its fairness opinion, RCO reviewed, used, and relied on "financial projections prepared by the management of the Company relating to the Company for the fiscal years ending April 30, 2019 through 2022." In fact, the financial projections served as the foundation for each of their valuation analyses. Defendants are asking shareholders to forgo all future interest in the Company in exchange for a fixed sum of cash—the Merger Consideration. Accordingly, the Company's omitted financial projections are the most important information shareholders need to determine

whether the Merger Consideration represents fair value for their shares. Thus, the omitted financial projections are plainly material to shareholders and must be disclosed. The failure to disclose the company's financial projections renders the summary of each of RCO's valuation analyses which relied upon the financial projections misleading.

27. Moreover, the Proxy states on page 48 that "RCO performed a discounted cash flow analysis to estimate the present value of the free cash flows of the Company through the fiscal quarter ending October 31, 2018 based on the average of the Company management's "best case" and "worst case" financial projections . . . ." This indicates that more than one set of financial projections exist and were relied upon by RCO. Therefore both—or all—sets of projections provided to and utilized by RCO must be disclosed, including when each set of projections was created by the Company's management.

28. Second, with respect to the *Discounted Cash Flow Analysis* ("DCF") prepared by RCO, the Proxy fails to disclose the following key information—in addition to the omitted projections—used in their analyses: (i) the inputs and assumptions underlying the calculation of the discount rate range of 10.0% to 11.0%, including the WACC and CAPM components; (ii) the inputs and assumptions underlying the selection of the 4.5 x to 5.5x exit multiples used to derive the terminal values; (iii) the actual terminal values calculated; (iv) the amount of debt and unrestricted cash and cash equivalents used to adjust the Company's enterprise value; and (v) the amount of shares after accounting for the vesting of in-the-money stock options used to derive the implied per share values.

29. These key inputs are material to Nevada Gold shareholders, and their omission renders the summary of the DCF incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with

the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" Id. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

30. Moreover, the amount of cash and debt used to adjust the Company's enterprise value is of particular importance to Nevada Gold shareholders given the flurry of transactions associated with the Proposed Merger. On May 23, 2018, the Company finalized and entered into an Asset Purchase Agreement with Michael J. Trucano to sell its South Dakota route operation for $400,000. On June 26, 2018, Nevada Gold sold Club Fortune Casino to Truckee Gaming for $14.6 million. As of a result of these two transactions alone, Nevada Gold had $15 million in cash. Reasonable Nevada Gold shareholders would undoubtedly consider what portion of the approximately $43 million aggregate Merger Consideration was accounted for by the Company's existing cash important when deciding how to vote on the Proposed Merger.

31. Without the above-omitted information—including the omitted free cash flow and EBITDA projections—Nevada Gold shareholders are misled as to the reasonableness or reliability of RCO's analysis, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the DCF included in the Proxy misleading.

32. Third, with respect to RCO's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples for each transaction utilized in the analysis and Nevada Gold's EBITDA projections on which the analysis is based. A fair summary of a transactions analysis requires the disclosure of the individual multiples for each transaction a financial advisor selects. Merely providing the range of values, or median, that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down Nevada Gold's implied value. Moreover, the entire analysis is based on comparing similar transactions to the EBITDA of the Company. Thus, the failure to disclose Nevada Gold's projected EBTIDA is also a material omission. Accordingly, the omission of the above material information renders the summary of RCO's *Selected Precedent Transactions Analysis* provided in the Proxy misleading.

33. Fourth, and finally, with respect to the *Background of the Merger*, the Proxy states that Nevada Gold and multiple parties entered into non-disclosure agreements, but fails to disclose whether such agreements contained a standstill provision and/or a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect. On page 24 the Proxy indicates that the non-disclosure agreement with Maverick contained a standstill provision. Additionally on page 62, the Proxy states "In addition, we may not, and must cause our subsidiaries not to, terminate, waive, or modify any provision of, or grant permission or request under, any standstill or confidentiality

agreement to which we or any of our subsidiaries is or becomes a party . . . ." These statements appear to indicate that standstill and DADWs were in effect after the signing of the Merger Agreement.

34. Accordingly, the express communication of such information is material to Nevada Gold shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal. The failure to disclose the existence of DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could have made a superior proposal. If those non-disclosure agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the descriptions of the non-disclosure agreements the Company entered into in the *Background of the Merger* section of the Proxy misleading. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

35. In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to cast a fully-informed vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

40. Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding: (i) the Company's financial projections; (ii) the valuation analyses performed by RCO; and (iii) the background of the Proposed Merger.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42. Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections for Nevada Gold and the details surrounding discussions with other interested parties and RCO. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review RCO's analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43. Each of the Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting material facts constitutes negligence. The

Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it—which they were required to do carefully. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of Nevada Gold's financial projections.

44. Nevada Gold is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

45. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and will deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Merger. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Nevada Gold within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Nevada Gold, and participation in and/or awareness of the Nevada Gold's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control,

15

directly or indirectly, the decision making of Nevada Gold, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Nevada Gold, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

53. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands relief in her favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

B. Preliminarily enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: December 4, 2018						Respectfully submitted,

							*/s/ Juan E. Monteverde*
							    Juan E. Monteverde

							**MONTEVERDE & ASSOCIATES PC**
							The Empire State Building
							350 Fifth Avenue, Suite 4405
							New York, NY 10118
							Tel.: (212) 971-1341
							Fax: (212) 202-7880
							Email: jmonteverde@monteverdelaw.com

							*Counsel for Plaintiff*